UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

ROBERT P.,[1]

    Plaintiff,

v.

KILOLO KIJAKAZI, et al.,

    Defendants.

Case No. 23-cv-03310-RMI

**ORDER REMANDING CASE**

Re: Dkt. Nos. 18, 22

Plaintiff seeks judicial review of an administrative law judge ("ALJ") decision denying his application for disability insurance benefits under Titles II and XVI of the Social Security Act. *See* Admin. Rec. at 250-266.[2] Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council (*see id*. at 1-6), thus, the ALJ's decision is the "final decision" of the Commissioner of Social Security which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both Parties have consented to the jurisdiction of a magistrate judge (dkts. 12 & 14), and the matter has been fully briefed (*see* dkts. 18, 22, 23). For the reasons stated below, this case is remanded for further proceedings.

## LEGAL STANDARDS

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set

---

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

[2] The Administrative Record ("AR"), which is independently paginated, has been filed in eight attachments to Docket Entry #15. *See* (dkts. 15-1 through 15-8).

aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The phrase "substantial evidence" appears throughout administrative law and directs courts in their review of factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**SUMMARY OF THE RELEVANT EVIDENCE**

Plaintiff – now 55 years old – worked for over 20 years as an installer and repairman in various positions in the information technology industry. *See* AR at 55, 490. Plaintiff testified that he lost his job at Comcast (which involved carrying around extension ladders and other such equipment) due to a number of issues including: (1) pain that he began to experience in his shoulders and spine; (2) a collapsed disc which pinches the nerve that goes down his right hand and causes numbness and a tingling sensation; (3) a 50% reduction in his gripping strength; (4) lifelong issues with his feet and ankles related to his flat feet; (5) arthritic gout in the knuckles of his toes that is attended with a stabbing pain in the feet when he walks; (6) chronic lower back pain that affects him during bending and lifting postures such as when has to dress himself, let alone when he has to lift heavy equipment such as laser printers and computer servers; (7) issues with his inability to focus and pay attention, which make it difficult for him to follow instructions and to function properly in social settings; (8) debilitating chronic depression that renders it difficult for him to get motivated to do anything; and (9) various respiratory issues that make it difficult for him to breathe. *Id*. at 61-62. Through a number of function reports, Plaintiff also

stated that he has difficulty lifting, squatting, bending, standing, sitting, kneeling, and climbing stairs. *Id*. at 469. He added that he also has difficulty lifting more than 20 pounds, and that his difficulty with walking results in him needing to rest for 10 minutes each time he walks as little as 100 yards. *Id*.

        Plaintiff also testified that after sitting for as little as 30 minutes, he would need to stand in order the alleviate the pressure associated with sitting – and, that after standing for as little as 30 minutes, he would need to sit in order to alleviate the pressure associated with standing (he noted that standing was more painful than sitting). *Id*. at 69. Plaintiff also testified as to his difficulty in bathing and dressing himself – noting that he requires a bathchair so that he can sit down while bathing, and that "[i]t probably takes [him] 20 minutes to half an hour to actually get clothing on." *Id*. Going up stairs is difficult for him due to his respiratory issues, and going down stairs "is actually more difficult that going up because you're fighting against gravity trying to pull you down the stairs [s]o you're putting a lot of impact on your feet and that can – sometimes I find myself holding onto the rails with one hand and bracing myself against the wall with the other hand and very carefully walking down the stairs." *Id*. at 70

        Plaintiff's father also submitted a third-party function report. *Id*. at 401-08. His father noted that Plaintiff "[h]as trouble with walking due to weight and bad knees," and that he "gets out of breath easily." *Id*. 401. Plaintiff's father also added that his knee problems and his respiratory problems affect his ability to lift, squat, stand, walk, kneel, or climb stairs – and that Plaintiff would need to rest as much as 30 minutes after walking as little as 100 yards. *Id*. at 406.

        In July of 2021, Plaintiff was examined by a consultative examiner – Farah Rana, M.D. – and was diagnosed with: (1) chronic obstructive pulmonary disease; (2) asthma; (3) chronic lower back pain, secondary to degenerative disc / degenerative joint disease; (4) chronic pain in knees and ankles (for which Dr. Rana stated, "[t]he claimant probably has mild arthritis involving these joints."); and, (4) flat feet. *Id*. at 1341-43. Then, without much explanation, Dr. Rana's report found that Plaintiff can walk for five hours during an eight-hour day with breaks, and that he can sit for six hours during an eight-hour day with breaks. *Id*. at 1343. However, Dr. Rana's report does not specify the length or frequency of these breaks, nor does it specify the basis for her

3

conclusion as to the functional capacity assessment itself. *See id*. She also opined that Plaintiff could carry 10 pounds frequently, that he could carry 20 pounds occasionally, and that he could "use push and pull devices up to 20 pounds." *Id*. Lastly, she opined that Plaintiff could stoop, bend, kneel, crouch, and climb on an occasional basis. *Id*.

## THE ALJ DECISION

The ALJ in this case engaged in the required five step sequential evaluation process. *See id*. at 253-265. At step one, the ALJ determined Plaintiff meets the insured status requirements of the Social Security Act through, December 31, 2021, and that he had not performed substantial gainful activity since December 15, 2019 – his alleged onset date. *Id*. at 253. At step two, the ALJ determined Plaintiff's severe impairments are degenerative lumbar spine disease, mild left scoliosis, obesity, a chronic obstructive pulmonary disorder (COPD), asthma, a depressive disorder, an attention deficit hyperactivity disorder (ADHD), and an amphetamine use disorder. *Id*.

At Step Three the ALJ found that no combination of Plaintiff's conditions met or equaled any listed impairment. *Id*. at 254-57. In formulating Plaintiff's residual functioning capacity ("RFC"), the ALJ determined that Plaintiff could perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can lift and carry twenty pounds occasionally and ten pounds frequently; that he can sit, stand, or walk for six out of eight hours; that he could frequently climb, stoop, kneel, crouch, and crawl; that he should avoid concentrated exposure to fumes, dust, odors, and pulmonary irritants; and, that he should be limited to performing simple routine tasks, non-collaborative interaction with co-workers, and occasional contact with the public. *Id*. at 257-63. At Step Four, the ALJ concluded that Plaintiff was incapable of performing his past relevant work. *Id*. at 263-64. Lastly, at Step Five, based on the testimony of the vocational expert, the ALJ concluded that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy, such as photo-copying machine operator, apparel marketer, and small products assembler. *Id*. at 264-65.

## DISCUSSION

Plaintiff raises five claims in this court – including the claim that the ALJ did not provide clear and convincing reasons to discredit his pain and symptom testimony. *See generally* Pl.s' Br.

(dkt. 18) at 9-18. As stated below, the court finds that the ALJ erred in this case by failing to develop the record properly – in a number of ways – before formulating Plaintiff's RFC. In short, the ALJ improperly rejected Plaintiff's testimony; the ALJ failed to develop the record to clear up internal ambiguities in Dr. Rana's functional assessment; the ALJ failed to develop the record in order to reconcile inconsistencies between Plaintiff's testimony and Dr. Rana's functional assessment; and, while appearing to base the RFC on Dr. Rana's functional assessment, the ALJ deviated from Dr. Rana's opined limitations without any stated basis for doing so (yielding an RFC that was not based on substantial evidence).

As to Plaintiff's testimony, claimants have the the burden of producing objective medical evidence of his or her impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms. *See Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). Here, the ALJ's opinion stated that "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." *See* AR at 258. However, once the claimant meets this burden (which the ALJ found to be the case), medical findings are not required to support the alleged severity of pain. *See Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (*en banc*) ("an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain"); *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (same). Thus, having provided some objective medical evidence of the impairments which might reasonably produce the symptoms or pain alleged (again, as the ALJ found to be the case), and since there was no evidence of malingering, the ALJ in this case could "reject the claimant's testimony about the severity of those symptoms by providing specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015) ("we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination"); *Benton*, 331 F.3d at 1040 (explaining that after a claimant has met the burden of producing objective medical evidence, an ALJ can reject the claimant's subjective complaints "only upon (1) finding evidence of

1  malingering, or (2) expressing clear and convincing reasons for doing so."); *see also* Social
2  Security Ruling ("SSR") 16-3p, 2016 SSR LEXIS 4 (findings "must contain specific reasons for
3  the weight given to the individual's symptoms, be consistent with and supported by the evidence,
4  and be clearly articulated so the individual and any subsequent reviewer can assess how the
5  adjudicator evaluated the individual's symptoms'). Here, the ALJ did not specify which parts of
6  Plaintiff's testimony were credited and which parts were not – the ALJ merely stated that "the
7  claimant's statements concerning the intensity, persistence and limiting effects of these symptoms
8  are not entirely consistent with the medical evidence and other evidence in the record for the
9  reasons explained in this decision." *See* AR at 258. By way of reasoning, the ALJ only stated:

> Specifically, he reported that he fixed meals, drove, and helped care for his mother. He does not need reminders to handle his personal needs or grooming. He does his laundry. He is able to go out alone. He does his own shopping in stores and can count change. He socializes in person and over the phone. He indicated that he did not have any problems getting along with family, friends, neighbors, or others. He can finish what he starts []. These activities require significant physical and mental demands, which are not consistent with the level of limitation the claimant alleges. Accordingly, the undersigned finds that the claimant's activities of daily living suggest a greater degree of functional capacity than claimed. *Id*. at 258-59.

16  The gist of the ALJ's reasoning is that fixing meals, grooming himself, socializing in person and
17  over the phone, driving, and helping care for his mother are "activities [that] require significant
18  physical and mental demands, which are not consistent with the level of limitation the claimant
19  alleges." *Id*.
20      However, a claimant's ability to engage in daily activities of living may be used to
21  discount his subjective complaints where (1) his activities "contradict his other testimony" or (2)
22  they "meet the threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir.
23  2007). Moreover, the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has
24  carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for
25  exercise, does not in any way detract from [his] credibility as to [his] overall disability." *Vertigan*
26  *v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Here, the ALJ failed to explain how Plaintiff's
27  listed daily activities were inconsistent with his testimony. *See e.g.*, *Smith v. O'Malley*, No. 1:21-
28  CV-0312 JLT BAM, 2024 U.S. Dist. LEXIS 52753, 2024 WL 1253852, at *5 (E.D. Cal. Mar. 25,

6

1  2024) (rejecting ALJ's reliance on daily activities to discount subjective complaints where "the AJ
2  did not make any determination that these activities conflict with Plaintiff's other statements
3  concerning her level of activity"); *see also Garrison v. Colvin*, 759 F.3d 995, 1015-1016 (9th Cir.
4  2014) (same); *see also Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The failure to
5  recognize these differences [between activities of daily living and activities in a full-time job] is a
6  recurrent, and deplorable, feature of opinions by administrative law judges in social security
7  disability cases."). By way of example, it is unclear how Plaintiff's ability to prepare simple
8  meals, socialize over the phone, do his laundry, or to groom himself (albeit, with pain) might be
9  inconsistent with any of his complaints and their effect on his ability to perform relevant job
10 functions. Accordingly, the court finds that the ALJ improperly rejected Plaintiff's testimony
11 under the standards set forth herein.

12 Having found that the ALJ failed to provide legally sufficient reasons, supported by
13 substantial evidence, for discounting Plaintiff's subjective symptom testimony, the court also finds
14 that remand for further administrative proceedings, rather than an award of benefits, is warranted
15 here, given that the record needs further development in this regard. *See Brown-Hunter*, 806 F.3d
16 at 495 (remanding for an award of benefits is appropriate in rare circumstances). Further
17 proceedings are needed because Plaintiff's claimed limitations need to be reconciled with Dr.
18 Rana's opined limitations – for which reason, it is not at this point clear whether Plaintiff is in fact
19 disabled. *Id*. at 496 ("We may remand on an open record for further proceedings 'when the record
20 as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning
21 of the Social Security Act.'" (quoting *Garrison*, 759 F.3d at 1021)).

22 When developing the record further in this regard, the ALJ is **ORDERED** to communicate
23 with Dr. Rana (or to secure her testimony) in order to secure from her a reasoned and detailed
24 basis for her opined functional capacity assessments (set forth above). For example, Dr. Rana
25 found that Plaintiff can walk for 5 hours out of an eight-hour day with breaks, and that he could sit
26 for 6 hours out of an eight-hour day – but there was no explanation as to why she found that to be
27 the case. If Dr. Rana can provide a reasoned explanation for that assessment, then Plaintiff's
28 testimony to the contrary may be given less persuasive weight; however, if Dr. Rana's opinion to

7

that effect cannot be supported with any reasoned explanation, then Plaintiff's testimony to the contrary would be persuasive. There was also no detail or specification as to the frequency, length, or nature of the breaks that would be necessary when Plaintiff would be sitting or walking for the lengths of time opined by Dr. Rana. Once the ALJ has developed the record in this regard, the ALJ must then compare Plaintiff's claimed limitations with Dr. Rana's (now missing) explanations for her functional assessment (including the frequency and duration of the breaks she considered necessary) in order to reconcile any inconsistencies prior to formulating the RFC. For example, if Dr. Rana's assessment contemplated a number of breaks (or breaks of such length) that would be work-preclusive, an undeveloped record in this regard yields an inherently unreliable disability determination.

Then there is the fact that Dr. Rana opined that Plaintiff could stoop, bend, kneed, crouch, and climb on an *occasional* basis; however, the RFC as formulated by the ALJ inexplicably found that Plaintiff could perform these postural movements *frequently*. *Compare* AR at 257 (ALJ Opinion) with AR at 1343 (Dr. Rana's Opinion). Confusingly, the ALJ stated that he was "generally persuaded" by Dr. Rana's opinion "which is roughly equivalent to light work with postural limitations because this opinion is generally supported by the mostly normal examination findings." *See id*. at 262-263. Given that the RFC was basically adopted from Dr. Rana's functional assessment, it is unclear why the ALJ chose to replace the word, "occasional," with the word, "frequent," when it comes to Plaintiff's supposed ability to stoop, bend, kneel, crouch, and climb. Putting aside the above-discussed fact that Dr. Rana's assessments are largely unexplained and require additional record development – the court also finds that there was no substantial evidence in the record to support the ALJ's determination that Plaintiff could perform these postural movements "frequently," rather than only "occasionally," as opined by Dr. Rana. It should also not go without mention that the ALJ deviated similarly from Dr. Rana's report as to the number of hours that Plaintiff can walk during an eight-hour day. Dr. Rana found (as stated above) that Plaintiff could walk for *five* hours *with* breaks of an unspecified number and duration during an eight-hour day (*see* AR at 1343), but the ALJ formulated an RFC that tasked Plaintiff with walking for *six* hours during an eight-hour day, and *without* any mention of breaks at all (*see*

8

1  AR at 257). The court thus finds that this portion of the RFC was also unsupported by any

2  substantial evidence in the record and it appears that the ALJ simply tried to force Dr. Rana's

3  opined limitations into the rough rubric of light work by making a series of arbitrary

4  modifications.

5       For these reasons, additional record development is necessary, and the court declines to

6  address Plaintiff's remaining arguments. Those issues, if necessary, may be addressed on remand.

7  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ

8  for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *Augustine*

9  *ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not

10  address the other claims plaintiff raises, none of which would provide plaintiff with any further

11  relief than granted, and all of which can be addressed on remand."). On remand, the

12  Commissioner is instructed to consider the other issues raised in Plaintiff's briefing and modify

13  the ensuing ALJ opinion as appropriate. *Steven M. v. Saul*, 2021 U.S. Dist. LEXIS 52225, *17

14  (N.D. Cal. Mar. 19, 2021).

## CONCLUSION

Accordingly, this case is **REMANDED** for further proceedings consistent with the holdings and instructions provided herein. A separate judgment shall issue.

**IT IS SO ORDERED.**

Dated: September 17, 2024

ROBERT M. ILLMAN
United States Magistrate Judge